IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE: : CASE NO. 10-00641 (ESL)

EDGAR O'NEILL MIRANDA AND
NYDIA R. O'NEILL SANTIAGO : CHAPTER 13

Debtors :

## OPINION AND ORDER

This case is before the court upon the Chapter 13 Trustee's (the "Trustee") objection to the confirmation of Edgar O'Neill Miranda and Nydia R. O'Neill Santiago's (the "Debtors") amended plan dated March 30, 2010 arguing that the projected disposable income should be calculated based on the difference between Debtors' income and their actual expenses per Schedule J, if the same are less than the amounts provided by the IRS National and Local Standards. The Trustee, concludes that Debtors amended plan fails to devote all of their projected disposable income received during the commitment period to the unsecured creditors. The Trustee also asserts that Debtors' amended plan is not proposed in good faith in conformity with 11 U.S.C. §1325(a)(3) since the same overstates Debtors expenses, resulting in a significant decrease in the distribution to unsecured creditors under their chapter 13 amended plan. Debtors argue that since they are above median income debtors, they may deduct the full amount of certain specified expenses under the IRS National and Local Standards in conformity with 11 U.S.C. §§1325(b)(3) and 707(b)(2)(A) and (B), irrespective of whether their actual expenses are above or below the IRS National and Local Standard amounts. Debtors also argue that their Christmas bonuses do not qualify as disposable income for bankruptcy purposes under 11 U.S.C. §101(10A) because Form 22C starts with debtor's average monthly income over the six months prior to the bankruptcy filing. The Trustee argues that the Christmas bonuses constitute income, and as such should be included in the calculation of projected disposable income. For the reasons stated herein, the court denies in part and grants in part the Chapter 13 Trustee's objection to Debtors' amended plan confirmation.

*Background*

Debtors filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on January 31, 2010. Debtors filed their Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income-Official Form 22C ("Form 22C"). The Debtors' household consists of two (2) persons, and Debtors have a household income that is above the median for a household of two (2) persons in the Commonwealth of Puerto Rico. Debtors' Form 22C shows that Debtors have a current monthly income of $3,972.85 (line item #20 of Form 22C) and annualized income of $47,674.20 (line item #21 of Form 22C). Debtors' monthly disposable income, according to Form 22C, results in a deficit of ($444.51)(line item 59 of Form 22C), given that the total deductions allowed under 11 U.S.C. §707(b)(2) of the Bankruptcy Code as indicated in Form 22C amount to $4,417.36 (line item 58 of Form 22C). Debtors' Schedule I- Current Income of Individual Debtors (s) ("Schedule I") indicates that Debtors combined average monthly income is $3,247.77. Debtors' Schedule J- Current Expenditures of Individual Debtor(s) ("Schedule J") lists average monthly expenses of $2,897.77, which includes $157.77 for water and sewer, $120.00 for telephone, $95.00 for cable and internet service, $500 for food, $300 for food at work for two persons and $225.00 for clothing (Docket No. 19). Debtors' monthly net income as per Schedule J results in $350.00 (average monthly income from line 16 of Schedule I minus average monthly expenses from line 18 of Schedule J). Debtors Chapter 13 amended plan (Docket No. 20) proposes to make 57 monthly payments of $350.00 and 3 monthly payments of $430.00 and 5 yearly payments of $1,000 in the month of December from Debtors' Christmas bonuses for a proposed base of $26,240 over a sixty (60) month period.

On April 5, 2010 the Chapter 13 Trustee filed its Unfavorable Report on Confirmation on Debtors' Chapter 13 amended plan because they had not presented evidence for their electricity, water, cable and mobile expenses and of their 2009 income tax return. On April 7, 2010, the confirmation hearing was held, and the Chapter 13 Trustee opposed confirmation of Debtors' amended plan because certain expenses listed on Schedule J were not reasonable. Debtor and the Chapter 13 Trustee agreed that this court had adjudicated on this particular issue in the case of In re John A. Figueroa Padilla and Irma I. López Valentín (Case #07-07495, Docket No. 64). The court

granted Debtors twenty-one days (21) to file a legal memorandum and twenty-eight (28) days to the Chapter 13 Trustee to reply to the same.

On May 5, 2010, the Debtors filed their legal memorandum arguing the following: (i) pursuant to Section 1325(b)(3), for above median debtors the "amounts reasonably necessary to be expended" shall be determined in accordance with subparagraphs (A) and (B) of Section 707(b)(2); (ii) Section 707(b)(2) mandates that certain of the debtor's expenses "shall be" the amounts specified under the National and Local Standards issued by the Internal Revenue Service for the area in which the debtor resides; (iii) for above median debtors, the means test formula is not representative of debtor's actual expenses since Section 707(b)(2) directs debtors to deduct the amounts permitted under the IRS guidelines, irrespective of whether debtors' actual expenses are above or below the guideline amounts; (iv) the BAPCPA amendments to Section 1325(b) limited judicial flexibility in bankruptcy proceedings by imposing objective standards on Chapter 13 determinations and thus, limited the bankruptcy court's discretion in reviewing the reasonableness of the expenses claimed by the above-median debtors which are mandated by Section 707(b)(2); (v) Kibbe v. Sumski (In re Kibbe), 361 B.R. 302 (B.A.P. 1st Cir. 2007) does not resolve the issue of allowable expenses for above or below median debtors; (vi) this court in the case of In re John A. Figueroa Padilla and Irma I. López Valentín (Case No. 07-07495, Docket No. 64) recognized that the amounts reasonably necessary to be expended for the maintenance or support of an above median debtor and his family is determined pursuant to §707(b)(2)(A) and (B); and (vii) the Christmas bonus does not qualify as disposable income for bankruptcy purposes under Section 101(10A) because Form 22C starts with debtor's average monthly income over the six months prior to the bankruptcy filing (Docket No. 24).

On August 17, 2010, the Chapter 13 Trustee filed his objection to confirmation and memorandum of law based on the following: (i) the monthly expenses for clothing ($225), combined food expense of $800, and water expense of $157.77 (the evidence provided by Debtors for the water expense was of $78.00), are not reasonable and should be reviewed and reduced by this court; (ii) the controlling force in determining debtor's projected disposable income should be the difference between debtor's income and actual expenses; (iii) "[i]t is the Trustee's position that the main discussion in the [Hamilton v. Lanning, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010)] decision is that the

3

amendments introduced to BAPCPA did not eliminate or reduce the bankruptcy court's discretion at confirmation. The courts can review the debtor's current financial situation and adjust the expenses listed at schedule J. The court's discretion to review the reasonability of debtor's expenses has remained unaltered after BAPCPA;" (iv) Debtors are disclosing expenses for food (in excess of $101) and clothing (in excess of $190) which surpass the allowed deductions permitted under the National IRS Standards; (v) Debtors have failed to provide evidence to the court of the reasonability of their expenses given that, "debtors provided to the Trustee copies of some invoices of their utilities bills and, the approximate amount of water expense is $78.00 a month and not the $157.77 disclosed and have failed to amend schedule J and the plan accordingly;" (vi) Debtors' amended plan is not proposed in good faith in conformity with 11 U.S.C. §1325(a)(3) since the same overstates Debtors expenses which results in a significant decrease in the distribution to unsecured creditors under the plan; and (vii) Debtors' Christmas bonuses are additional income that must be accounted for at the time of proposing their Chapter 13 plan, as such it has been suggested that Debtors amend their plan to provide for periodic lump sumps consisting of half of their Christmas bonuses (Docket No. 44).

On August 24, 2010, Debtors filed their reply to the Chapter 13 Trustee's objection to confirmation and memorandum of law by which they presented the following arguments: (i) <u>Hamilton v. Lanning</u>, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010), is not applicable to Debtors because a significant change has not occurred in their current monthly income or in their Form 22C based expenses nor is this an unusual or exceptional case. The Supreme Court of the United States in <u>Hamilton v. Lanning</u>, "recognized that respondent Lanning had the stronger argument when she agreed that the mechanical method outlined by the trustee-petitioner should be determinative in most cases, but that in exceptional cases, where significant changes in a debtor's financial circumstances are known or virtually certain, a bankruptcy court has the discretion to make an appropriate adjustment;" (ii) under the means test formula enacted by Congress, the allowed expenses pursuant to Section 707(b)(2) for above median income debtors are not reflective of debtors actual expenses, irrespective of whether debtors' actual expenses are above or below the guideline amounts; (iii) this court in In re John A. Figueroa Padilla, recognized the following: (a) that the amounts reasonably necessary to be expended for the maintenance and support of an above median income debtor is

determined pursuant to Section 707(b)(2)(A) and (B); (b) "the means test governs which expenses an above-median debtor may deduct in calculating disposable income;" (c) "pursuant to §707(b)(2)(A)(ii)(I), the debtor's monthly expenses 'shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides;'" (d) "the expense component is controlled by Form B22C, in part by National and Local Standards, and in part by actual expenses;" (iv) debtors are entitled to actual monthly expenses only as to Other Necessary Expenses; (v) Debtors reaffirm that their income and actual expenses reported in Form 22C have not changed since the petition filing date; (vi) the Chapter 13 Trustee's request of evidence for certain utility expenses are covered by the National and Local Standards of Form 22C that control the expense component; (vii) Debtors' Christmas bonuses are already included in their current monthly income in Form 22C; and (viii) the Christmas bonus does not qualify as disposable income.

On September 8, 2010 a hearing was held in which the court ordered the Debtors and the Chapter 13 Trustee to file a joint motion regarding the uncontested and contested issues of facts within thirty (30) days. On October 12, 2010 Debtors filed an amended Form 22C to delete mortgage payments on line items 25B and 47 of Form 22C. Subsequently, on October 29, 2010 Debtors and the Chapter 13 Trustee filed jointly the stipulated facts pertaining to the instant case.

## Stipulated Facts

(1) Debtors were the owners of a residence located at Barrio Sabana Seca, F-12 Calle Camelia, Toa Baja, PR. Schedule of Real Property (Schedule A);

(2) Debtors could not pay the mortgage and moved out in December of 2008. Schedule A- Real Property;

(3) the person who rented the first floor did not pay on time and the property is being foreclosed;

(4) Debtors have provided a lift of the automatic stay in favor of Banco Popular de Puerto Rico ("BPPR") (Schedule A- Real Property);

(5) on June 4, 2010, BPPR filed a motion requesting relief of the automatic stay which was

granted by this Court on June 29, 2010 (Docket #29 & 36);

(6) Debtors filed their voluntary petition on January 31, 2010;

(7) as of the date of the filing of the petition, and at all times relevant hereto, Debtors' street and mailing address is: Urb. Levittown FK 43 C Mariano Abril Toa Baja, PR;

(8) Debtors' Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, commonly referred to as the "Means Test" or Form B22C or Form 22C, dated November 13, 2009 reveals that Debtors are above the median income for a household of two;

(9) the applicable median family income for a household of two for this district is $20,384.00 (Form 22C, line #1);

(10) Debtors' average monthly income is $3,972.85 (Form 22C, line #11);

(11) Debtors' annualized current monthly income is $47,674.20 (Form 22C, line #15);

(12) Debtors took a mortgage expense deduction from their income in the amount of $1,078.00 at line 47 of Form 22C specifying it was in relation to Debtors' residence being the secured creditor BPPR;

(13) Line 47 of Form 22C reads: "Future payments on secured claims. For each of your debts that is secured by an interest in property that you own, list the name of the creditor, identify the property securing the debt, state the Average Monthly Payment, and check whether the payment includes taxes or insurance. The Average Monthly Payment is the total of all amounts scheduled as contractually due to each Secured Creditor in the 60 months following the filing of the bankruptcy case, divided by 60. If necessary, list additional entries on a separate page. Enter the total of the Average Monthly;"

(14) in their Form 22C, Debtors' ended with a monthly disposable income of negative $520.51;

(15) on October 12, 2010, Debtors' filed an amended Form 22C dated November 13, 2009 with the disclosed purpose of deleting from lines 25B and 47 the mortgage payment, now resulting in a negative disposable income of $444.51;

(16) the Debtors and the Trustee do not question the validity of the I.R.S. National and Local

expense allowances contained on Form 22C;

(17) pursuant to Debtors' amended schedule of Income (Schedule I at Docket No. 19), joint debtor Edgar O'Neill works as an executive assistant with the municipality of Bayamón and joint debtor Nydia R. Oeill works as a secretary with Power Engineering at Cataño, Puerto Rico;

(18) Debtors' amended Schedules of Income and Expenses (Schedules I & J) dated March 30, 2010 (Docket No. 19) show the following: (a) a combined gross monthly income of $3,972.85, the same as expressed in Form 22C; (b) a combined average monthly net income of $3,247.77; (c) average monthly expenses of $2,287.77; (d) a resulting $350.00 monthly net income; and (e) monthly expenses for clothing ($225.00), combined food expense of $800 for two persons;

(19) Debtors have provided the Trustee with evidence that their water expense was $82.03;

(20) Debtors in the present case are disclosing in Schedule J expenses for food and clothing in excess of $101 and $190 respectively a month from the National IRS Standards;

(21) the expense allowances claimed by the Debtors on Form 22C have not changed since filing the petition, except for the amount claimed for mortgage expenses in amended Form 22C;

(22) Debtors receive an approximate combined amount of $2,000.00 yearly in Christmas bonuses; and

(23) Debtors intend to spend the $2,000.00 on "clothes, toys, home appliances, electronic goods, services, etc." (Docket No. 48).

*Applicable Law & Analysis*

*Income Side*

A determination of the amounts that an above-median income Chapter 13 debtor must pay unsecured creditors under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA") has two basic components, income and expenses. Under

Section 1325(b)(1)(B)[1], if the trustee or an unsecured creditor objects to confirmation of the plan, the bankruptcy court may not confirm the plan unless the plan, "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the

---

[1] Section 1325(b) provides:
(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan–
(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
(B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

(2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended–
(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
(ii) for charitable contributions (that meet the definition of 'charitable contribution' under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

(3) Amounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has a current monthly income, when multiplied by 12, greater than–
(A) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
(B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median income of the applicable State for a family of the same number or fewer individuals; or
(C) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual in excess of 4." 11 U.S.C. §1325(b).

plan." 11 U.S.C. §1325(b)(1); See In re Padilla, 2009 Bankr. Lexis 2701(Bankr. D.P.R. 2009). The Debtors bear the burden of establishing that their proposed plan is confirmable. See In re McCarty, 376 B.R. 819, 821 (Bankr. N.D. Ohio 2007). The Bankruptcy Code does not define projected disposable income. However, the Supreme Court, in Hamilton v. Lanning held that a bankruptcy court must use the forward looking approach (rather than the mechanical approach) when calculating a debtor's "projected disposable income," to account for changes in the debtor's income and/or expenses that are known or almost certain at the time of confirmation. Hamilton v. Lanning, 130 S. Ct. 2464, 177 L. Ed. 2d 23 (2010). The debtor's "projected disposable income" will be limited to his disposable income if there are no changes in debtor's income or expense that are known or virtually certain at the time of confirmation. Id. The Supreme Court in Hamilton v. Lanning, specifically recognized that, "a court taking the forward-looking approach should begin by calculating disposable income, and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." Id. at 2475. The Hamilton v. Lanning was an unusual case, as the debtor received a one-time buyout from her former employer in the six (6) months prior to filing for bankruptcy which greatly inflated Lanning's current monthly income as defined in 11 U.S.C. 101(10A).

Disposable income for an above median income debtor is defined as debtor's current monthly income, minus the amounts reasonably necessary to be expended as determined pursuant to Section 707(b)(2)(A) and (B). 11 U.S.C. 1325(b)(2) & (b)(3). Section 101(10A) defines current monthly income as:

> "... the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period." 11 U.S.C. §101(10A).

Debtors' Christmas bonuses fall into the definition of "income from all sources" pursuant to Section 101(10A) and the same are not excluded under Section 101(10A)(B). In the instant case, Debtors must include their regular Christmas bonuses as part of their CMI, since the same were received six (6) months prior to Debtors' bankruptcy filing. Moreover, even if Debtors had received their Christmas bonuses outside of the six (6) month period prior to their bankruptcy filing they would

have had to include their Christmas bonuses as part of their "projected disposable income." See <u>In re Arsenault</u>, 370 B.R. 845, 851 (Bankr. M.D. Fla. 2007)("Accordingly, the Court finds that the income component of projected disposable income as set forth in section 1325(b)(1)(B) is the anticipated income of the Debtors during the applicable commitment period, including future annual bonuses"). Furthermore, Christmas bonuses fall under the definition of gross income under Section 1031.01 of the Internal Revenue Code for a New Puerto Rico (the "PR Code") and the same are not exempted from income under Section 1031.02 of the PR Code, thus Debtors' Christmas bonuses are fully taxable.

*Expense Side*

Section 1325(b)(2) defines the term "disposable income" as "current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended."11 U.S.C. §1325(b)(2). "Amounts reasonably necessary to be expended" ... "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income... greater than the highest median family income of the applicable State." 11 U.S.C. §1325(b)(3). For above median income debtors, the means test in Section 707(b)(2) is employed to determine the amounts "reasonably necessary" debtors may deduct in calculating disposable income. The means test, "...supplants the pre-BAPCPA practice of calculating debtors' reasonable expenses on a case-by-case basis, which led to varying and often inconsistent determinations." <u>Ransom v. FIA Card Servs., N.A.</u>, 131 S. Ct. 716, 178 L. Ed. 2d 603 (2011) citing <u>In re Slusher</u>, 359 B.R. 290, 294 (Bankr. Ct. Nev. 2007). "The formula for above-median-income debtors is known as the 'means test' and is reflected in schedule (Form 22C) that a Chapter 13 debtor must file." <u>Hamilton v. Lanning</u>, 139 S. Ct. at 2470, fn. 2. Section 707(b)(2)(A)(ii)(I) provides in its pertinent part that, "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides." 11 U.S.C. §707(b)(2)(A)(ii)(I).

The Supreme Court in <u>Ransom v. FIA Card Servs., N.A.</u>, recently decided that an above-median income debtor who does not make loan or lease payments may not take the car ownership deduction, given that such deduction is not "applicable" to the debtor because she will not incur in that kind of expense during the life of the plan. As part of its analysis, the Supreme Court in <u>Ransom v. FIA Card Servs., N.A.</u>, noted that, "[i]f a debtor will not have a particular kind of expense during his plan, an allowance to cover that cost is not 'reasonably necessary' within the meaning of the statute." <u>Id</u> at 612. However, the Supreme Court in <u>Ransom v. FIA Card Servs., N.A.</u>, particularly declined to resolve the issue before this court, that is whether an above median income debtor may claim the full amount of the deductions under the IRS's National and Local Standards when the debtor has expenses which are lower than the amounts listed in the Standards.[2] Bankruptcy courts are split on this particular provision regarding the expense component of the disposable income calculation. See <u>In re Young</u>, 392 B.R. 6, 15-23 (Bankr. D. Mass. 2008).

The United States Government (the "Government") presented its position on this particular issue in its *Amicus Curiae* brief for the <u>Ransom</u> case and stated that if an above median income debtor has some expense which is specified under the IRS's National and Local Standards, the debtor is allowed to deduct the standardized amount even if the same exceeds his or her actual expense. See Brief for the United States as *Amicus Curiae* at 19-22, <u>Ransom v. FIA Card Servs.N.A.</u>, 131 S. Ct. 716 (2011) (No. 09-907). One of the underlying reasons for the Government's position is that notwithstanding the fact that employing a debtor's actual expenses when the same are less than the National and Local Standards would accomplish Congress' purpose of ensuring that debtors who have the means to pay the most they can to unsecured creditors, this is not the best reading of Section 707(b)(2)(A)(ii)(I). The Government notes that Section 707(b)(2)(A)(ii)(I) , "...strikes a balance between precision and ease of administration by requiring a debtor who invokes the deduction to

---

[2] Regarding this particular issue, the Supreme Court stated, "[t]he parties and the Solicitor General as *amicus curiae* dispute the proper deduction for a debtor who has expenses that are *lower* than the amounts listed in the Local Standards. Ransom argues that a debtor may claim the specified expense amount in full regardless of his out-of-pocket costs. Brief for Petitioner 24-27. The Government concurs with this view, provided (as we require) that a debtor has *some* expense relating to the deduction." <u>Ransom v. FIA Card Servs., N.A.</u>, 178 L. Ed. at 615, fn. 8.

establish the existence, but not the exact amount" of a certain expense, in this particular case it was the vehicle ownership expense. Brief for the United States as *Amicus Curiae* at 20, Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716 (2011) (No. 09-907). This supports Congress' policy behind the means test which was the uniform application of a bright-line test, which was more important than accuracy and which limited judicial discretion in the application of the same. See In re Briscoe, 374 B.R. 1, 11-12 (Bankr. D.D.C.. 2007); In re Farrar-Johnson, 353 B.R. 224 (Bankr. N.D. Ill. 2006) ("Allowing Schedule J back into the disposable income equation, as the trustee urges, would undo what Congress sought to accomplish in section 1325(b)(3). One of the aims of the means test was to limit judicial involvement– and also judicial discretion–by making mechanical the determination of abuse under section 707(b)); Hildebrand v. Kimbro (In re Kimbro), 389 B.R. 518, 525-528 (B.A.P. 6th Cir. 2008); In re Young, 392 B.R. 6, 22 (Bankr. D. Mass. 2008). Moreover, the Supreme Court in Ransom v. FIA Card Servs., N.A., noted the following regarding Congress' adoption of a bright line test, "[in] eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces." Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 178 L. Ed. 2d 603 at 616-617.

The Government's second reason for its position is that, "Section 707(b)(2)(A)(ii)(I) does not incorporate by reference every feature of the IRS's tax collection methodology, but rather allows the debtor to deduct his 'applicable monthly expense amounts specified under the National and Local Standards. Although the IRS in collecting delinquent taxes considers the taxpayer's actual loan or lease payments, those actual 'expense amounts' are not 'specified' either in the Local Standards themselves or in any accompanying statements, but are instead derived from evidence unique to the particular debtor involved." Brief for the United States as *Amicus Curiae* at 21, Ransom v. FIA Card Servs.N.A., 131 S. Ct. 716 (2011) (No. 09-907). The Government compared the language in Section 707(b)(2)(A)(ii)(I) with the IRS's statement regarding the allowed deductions which specifically stated that, "the taxpayer is allowed the amount actually spent or the standards, whichever is less" and noted that the IRS's statement, "supports this reading of the Bankruptcy Code, since that statement contrasts the 'standard' with the 'amount actually spent' and presumes that the former term refers to

the standardized amounts set out in the IRS tables. Id. at 21. This court finds that this analysis is consonant with the Supreme Court's statement in Ransom v. FIA Card Servs., N.A., explaining that, "[a]lthough the statute does not incorporate the IRS's guidelines, courts may consult this material in interpreting the National and Local Standards; after all, the IRS uses those tables for a similar purpose–to determine how much money a delinquent taxpayer can afford to pay the Government. The guidelines of course cannot control if they are at odds with the statutory language."Ransom v. FIA Card Servs., N.A., 131 S. Ct. 716, 178 L. Ed. at 613. Furthermore, the Government citing In re Briscoe, 374 B.R. at 6-7, noted that its reading of Section 707(b)(2)(A)(ii)(I) is in conformity with the consensus[3] view among the bankruptcy courts and with the view of the Advisory Committee on the Federal Rules of Bankruptcy Procedure. Id. at 21; See also; Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th ed, §476.1 at ¶___, Sec. Rev. Mar. 19, 2009, www.Ch13online.com ("A significant number of courts have recognized that a Chapter 13 debtor with CMI greater than applicable median family income is allowed the Local Standards Housing and Utilities Expense amount without regard to whether the debtor's actual rent or mortgage is less than the Local Standards amount. Many of these courts acknowledge that the Internal Revenue Manual limits the Local Standards Housing and Utilities expense amount to the lesser of a taxpayer's actual rent or mortgage or the allowance in the tables. These courts appropriately refuse to apply the Internal Revenue Manual interpretation of the Local Standards Housing and Utilities because to do so would be inconsistent with §707(b)(2)(A)(ii)(I)").

The Trustee argues that in In re Kibbe, 361 B.R. 302 (B.A.P. 1st Cir. 2007), the court concluded that "projected disposable income" is determined outside of Form B22C. The controversy in the In re Kibbe case was whether the term "projected disposable income differs from the term "disposable income" as defined in Section 1325(b)(2) and particularly whether the income side of the

---

[3] In In re Rezentes, 368 B.R. 55, 59-62 (Bankr. D. Haw. 2007) the court adopting the Internal Revenue Manual, held that Congress intended debtors to repay the maximum they could afford to their unsecured creditors, given that Section 707(b)(2)(A) and (B) functions as a screening mechanism to achieve this objective and as such above median income debtors may deduct the lesser of the IRS Local Standard housing expense or their actual housing expense.

equation should be rooted in the calculation of "current monthly income" set forth in Form 22C. The court held that the income component of "projected disposable income" under Section 1325(b)(1)(B) was the anticipated actual income of the debtor subject to the income exclusions during the plan commitment period. In re Kibbe, 361 B.R. at 314. However, In re Kibbe is not on point with the issue before this court because the expense side for an above-median income debtor which is statutorily determined by Section 707(b)(2)(A) and (B) was not before the court. The court expressly noted that, "[w]e further note that ambiguities, if any, in the calculation of allowable expenses for above or below-median debtors are not before us." In re Kibbe, 361 B.R. at 314 fn. 11.

The Trustee further argues that the Supreme Court's holding in Hamilton v. Lanning, did not limit the bankruptcy court's discretion to review the income and the expense side of the formula. The Trustee cites the following excerpts from the Hamilton v. Lanning decision as support for his position, "[w]e decline to infer from §1325's incorporation of §707 that Congress intended to eliminate, *sub silentio*, the discretion that courts previously exercised when projecting disposable income to account for known or virtually certain changes." "[Thus] we hold that when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of conformation." (Docket No. 44, p.10). This court finds that the Trustee's reliance on the Hamilton v. Lanning decision is misplaced. The holding of the Supreme Court in Hamilton v. Lanning was that in most cases the mechanical approach pursuant to Section 1325(b)(1)(B) should be determinative, but in unusual cases where significant changes in a debtor's financial circumstances are known or virtually certain, the bankruptcy court has discretion to make appropriate adjustments. The Hamilton v. Lanning decision dealt with the income side of the formula, not the expense side.

The Trustee also states that this court in the case of In re Padilla, 2009 Bankr. Lexis 2701 (Bankr. D.P.R. 2009) resolved a similar legal issue as the instant case whereby this court adopted the forward looking approach of In re Kibbe by concluding as follows: "[t]he debtors approach to calculate projected disposable income is rejected by this court. Projected disposable income is a forward looking concept based on reality and not controlled by Form B22C. On the other hand, the expense component is controlled by Form B22C, in part by the National and Local Standards, and in

14

part by actual expenses. The debtors have failed to detail the applicability of each and all expenses controlled by Form B22C. Moreover, evidence of the reasonability of actual expenses, when applicable, has not been presented to this court." (Docket No. 44, pgs. 10-11). This court in the case of In re Padilla stated that for above-median income debtors, "the Local Standards 'shall be' the expense amounts specified under the National Standards and Local Standards, irrespective of whether those are the debtor's actual expenses. Id. citing In re Young, 392 B.R. 6, 22 (Bankr. Mass. 2008); Hildebrand v. Kimbro (In re Kimbro), 389 B.R. 518, 523 (B.A.P. 6th Cir. 2008). This court also stated that, "[d]ebtors are entitled to actual monthly expenses only as to Other Necessary Expenses. Id. citing In re Burbank, 401 B.R. 67 (Bankr. R.I. 2009). In In re Coffin, 435 B.R. 780 (B.A.P. 1st Cir. 2010) this judge also opined that an above median income Chapter 13 debtor may deduct the standard vehicle ownership expense on vehicles he owned outright. However, the Supreme Court in Ransom overruled said conclusion finding that in order for the expense to be applicable it must exist. The Supreme Court specifically declined to resolve the issue before the court, whether debtor may claim the specified expense amount in full, regardless of the actual costs, when the debtor has expenses that are lower than the amounts in the Local Standards. Ransom, 178 L. Ed. at 615, fn. 8.

This court agrees with the rationale and analysis taken by the Government in Ransom and determines that a debtor who has expenses lower than the Local Standards may claim the full amount specified in the standards.

*Good Faith*

In order for a Chapter 13 plan to be confirmed, the same must be proposed in good faith. 11 U.S.C. §1325(a)(3). The term "good faith" is not statutorily defined. Good faith is determined on a case by case basis employing the totality of the circumstances analysis to the facts of the case. See In re Slade, 15 B.R. 910, 911 (9th Cir. B.A.P. 1981); In re Stitt, 403 B.R. 694, 703 (Bankr. D. Idaho 2008). The Sixth Circuit has held that bankruptcy courts should consider the following non-exclusive factors as part of the totality of the circumstances analysis to determine whether a Chapter 13 plan was proposed in good faith, namely: (1) the amount of the proposed payments and the amount of the debtor's surplus; (2) the debtor's employment history, ability to earn, and likelihood of future increase in income; (3) the probable or expected duration of the plan; (4) the accuracy of the plan's statements

15

of the debts, expenses, and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court; (5) the extent of a preferential treatment between classes of creditors; (6) the extent to which secured claims are modified; (7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7; (8) the existence of special circumstances such as inordinate medical expenses; (9) the frequency with which a debtor has sought relief under the Bankruptcy Reform Act; (10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; (11) the burden which the plan's administration would place upon the trustee; and (12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code. In re Caldwell, 895 F. 2d 1123, 1126-27 (6th Cir. 1990); Smyrnos v. Padilla (In re Padilla), 213 B.R. 349, 352 ( B.A.P. 9th Cir. 1997). In employing the totality of the circumstances analysis, "[t]he trick seems to be not placing too much weight on any single factor, but in the court's looking at how a number of factors in any given case operate together to betray a plan proposed in bad faith." In re McLaughlin, 217 B.R. 772, 775-76 (Bankr. W.D. Tex. 1998) (citing L. Clark & S. Lane, *Having Faith in Good Faith Analysis*, 683 PLI/Comm.) (669 Practicing Law Institute 1994). This methodology is consonant with the purpose of the good faith analysis which centers on whether the debtor filed his proposed plan with "honesty of intention," namely in conformity with the spirit and purpose of the law or for debt avoidance purposes through manipulation of the Code. See In re Paley, 390 B.R. 53, 58 (Bankr. N.D. N.Y. 2008); In re Ochs, 283 B.R. 135, 137 (Bankr. E.D.N.Y. 2002).

In the instant case, the Chapter 13 trustee indicates that Debtors' amended plan is not proposed in good faith in conformity with 11 U.S.C. §1325(a)(3) since the same overstates Debtors expenses which results in a significant decrease in the distribution to unsecured creditors under the plan. This court agrees with the interpretation of various courts that have concluded that for a plan to be filed in good faith the debtor does not need to contribute any more funds to pay unsecured creditors than required by Section 1325(b)(1). See In re Briscoe, 374 B.R. at 21-22.

Lastly, the Trustee requests that Debtors' may not deduct amounts for food and clothing that exceed the IRS's National Standards. At this juncture, Debtors' have not demonstrated to this court that the additional allowance of five percent (5%) for food and clothing is reasonable and necessary

as established by Section 707(b)(2)(A)(ii)(I)[4]. Thus, Debtors are not entitled to the additional allowance for food and clothing.

## Conclusion

The Chapter 13 trustee's objection to confirmation is denied in part and granted in part. The court finds that Debtors pursuant to Section 707(b)(2)(A)(ii)(I) may deduct the full amount of applicable expenses under the IRS's National and Local Standards if they provide evidence to the Trustee that they have some expense for that particular category, irrespective of the fact that their actual expenses for certain categories are lower. Above-median income debtors are limited to the amounts allowed per the IRS's National and Local Standards even if their actual expenses for certain categories are higher or lower. This court finds that Debtors' Christmas bonuses are income pursuant to Section 101(10A) and the same are not excluded under Section 101(10A)(B) and as such form part of Debtors' disposable income. Lastly, this court concludes that Debtors are not entitled to the additional allowance for food and clothing pursuant to Section 707(b)(2)(A)(ii)(I) since they have not demonstrated that the same is reasonably necessary.

SO ORDERED.

In San Juan, Puerto Rico, this 9th day of March 2011.

*Enrique S. Lamoutte*
United States Bankruptcy Court

---

[4] Section 707(b)(2)(A)(ii)(I) provides in pertinent part; "[i]n addition, if it is demonstrated that it is reasonable and necessary, the debtor's monthly expenses may also include an additional allowance for food and clothing up to 5 percent of the food and clothing categories as specified by the National Standards issued by the Internal Revenue Service." 11 U.S.C. §707(b)(2)(A)(ii)(I).